UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STEVEN L. WEI,

                      Petitioner,               Case No. 1:15-cv-259

v.                                         Honorable Robert J. Jonker

THOMAS MACKIE,

                      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Steven L. Wei is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan.  Following a jury trial in the Muskegon County Circuit Court, Petitioner was convicted of three counts of second-degree criminal sexual conduct (CSC-II), Mich. Comp. Laws § 750.520c(1)(a), and two counts of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b(1)(a).  On January 13, 2012, he was sentenced to 5 years, 11 months to 15 years' imprisonment for each CSC-II and 25 to 45 years' imprisonment for each CSC-I conviction.

Petitioner appealed the judgment of conviction to the Michigan Court of Appeals. In the brief filed by his appellate attorney, Petitioner contended that the evidence was insufficient to convict him and the prosecutor engaged in misconduct.  (Pet., ECF No.1, Page ID.4.)  In a *pro per* supplemental brief, Petitioner also raised the following issues:

> I.      Defendant was deprived of Due Process, Equal Protection, and other Constitutional Rights when he was unlawfully charged with two added counts of First Degree Criminal Sexual Conduct.

II.     Defendant's 14th Amendment Right to Due Process was violated when Judge Hicks abused his discretion denying Defendant a fair and neutral arbitrator.

III.    Defendant's 14th Amendment right to a fair trial was violated when he was goaded into a mistrial subsequently violating his 5th Amendment protection against Double Jeopardy.

IV.     Dr. Buchanan, an expert witness in the areas of child sexual abuse and emergency medi[cine] was impermissibly allowed to testify to someone else's statements that the complainant was the victim of sexual penetration.  This constitutional error requires reversal because it invaded the provi[]nce of the jury as ultimate fact finder.  Thus, violating the defendant's constitutional due process right to a fair trial.

V.      Defendant's constitutional due process right to a fair trial was denied when the prosecutor prompted the complainant to mark a diagram depicting a spread eagle vagina differently than she did at the first trial, thus implying that the defendant must have committed the offense of first degree criminal sexual conduct.

VI.     Defendant's 6th Amendment right to a speedy trial was denied when the prosecution failed to bring him to trial in a timely fashion.

VII.    Whether the prosecution's actions rendered the entire trial and all proceedings pertaining thereto unfair[,] tantamount to a due process deprivation.

(Def.-Appellant's Standard 4 Br. on Appeal, ECF No. 1-1, Page ID.45.)   In the concluding statements of his appellate brief, Petitioner asserted that he was denied the effective assistance of appellate counsel because his appellate attorney "failed to properly familiarize himself with defendant's case" and failed to "effectively present the two issues he did raise . . . ."  (*Id.*, PageID.99-100.)

In a per curiam opinion entered on October 17, 2013, the Michigan Court of Appeals rejected Petitioner's claims and affirmed the judgment of the circuit court.  Petitioner moved for reconsideration, but his motion was denied on December 16, 2013.  Petitioner also filed a "memorandum" in which he requested the opportunity to raise the issue of ineffective assistance of appellate counsel, because appellate counsel allegedly failed to effectively present the claims

raised in counsel's brief and failed to present other viable claims.  (*See* Memo. of Ineffective Assistance of Appellate Counsel D. Rust, ECF No. 1-5, Page ID.145-46, 150-51.)  The Michigan Court of Appeals refused to consider Petitioner's memorandum "because there is no provision in the court rules to accept such a filing."  (Dec. 6, 2013, Letter to Pet'r from Mich. Ct. App., ECF No. 1-5, Page ID.155.)

Petitioner then sought leave to appeal to the Michigan Supreme Court, raising the same seven issues that he raised in his *pro per* brief on appeal, as well as the issue of ineffective assistance of appellate counsel.  The Michigan Supreme Court denied leave on April 28, 2014, because it was not persuaded that the questions presented should be reviewed.  Petitioner also filed a petition for writ of certiorari to the United States Supreme Court, which denied the petition on November 6, 2014.

Petitioner filed the instant action on or about March 12, 2015, raising the following grounds for relief:

I.      Prosecution committed many errors facilitating their charges of 1st CSC during the 6-month span up to the 1st trial.

II.     Judge Timothy Hicks, trial judge, abused his discretion in multiple ways in favor of the prosecutor.

III.    Petitioner's 5th Amend. protection against Double Jeopardy was violated, 14th Amend. right to fair trial violated, when prosecution used a huge *Brady* violation to halt trial and goad defense into moving for a mistrial.

IV.     During both trials, the jury was prejudiced against defense when prosecutor used an Expert witness with improper testimony.

V.      Violation of 14th Amend. when prosecutor Hedges used a diagram that was fundamentally prejudicial in its nature, while manipulative in its use.

VI.     Petitioner's 6th Amendment Speedy Trial was violated over a 19-month span from arrest to conviction.

3

VII.    Prosecutors committed misconduct in their actions and words during proceedings and prejudicial comments.

VIII.    Ineffective Assistance of Appellate Counsel Daniel Rust.

(Pet., ECF No. 1, Page ID.8, 18, 20, 22, 23, 25, 27, 29) (with minor alterations).  The first seven of Petitioner's grounds for relief roughly correspond to the seven issues that he raised in his *pro per* brief on appeal, which were considered and rejected by the Michigan Court of Appeals.  In contrast, Petitioner raised the eighth ground for relief (1) in a brief reference in the closing remarks to his *pro per* brief on direct appeal, (2) in a procedurally improper "memorandum" to the Michigan Court of Appeals, and (3) in his application for leave to appeal to the Michigan Supreme Court.

Following preliminary review of the petition under Rule 4, Rules Governing § 2254 Cases, and 28 U.S.C. § 2243, the Court dismissed the petition without prejudice for failure to exhaust available state-court remedies with respect to Petitioner's eighth issue.  Petitioner responded by voluntarily dismissing the unexhausted issue, agreeing to proceed only with regard to the first seven issues in his petition.  (Pet'r's Mot. to Reopen Case, ECF No. 7.)

Respondent has filed an answer to the petition (ECF No. 15) stating that the grounds should be denied because they are unexhausted, procedurally defaulted, or without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

**Discussion**

I.     Factual Allegations

Petitioner repeatedly sexually abused his daughter.  He admitted as much in a recorded interview with police when he was arrested the day his daughter finally disclosed the abuse.  (Trial II Tr. V, ECF No. 16-16, PageID.1796-1802; Trial II Tr. VI, ECF No. 16-17, PageID.1808-1809, 1820-1821.)   At trial—the second trial, the first ended in a mistrial—Petitioner's attorney freely acknowledged that Petitioner was guilty of CSC-II.  (*Id*., PageID.1943-1944.)  The only issue the jury needed to decide was whether Petitioner's sexual touching of his daughter with his penis involved penetration of the anus (Count IV, CSC-I) or vagina (Count V, CSC-I).

The victim reported that Petitioner's penis did not go inside either "hole."  (Trial II Tr. IV, ECF No. 16-15, PageID.1503.)   Nonetheless, there was evidence consistent with anal penetration.  Specifically, a rectal swab included semen that matched Petitioner's DNA.  (Trial II Tr. V, ECF No. 16-16, PageID.1660-1663, 1781-1791.)

There was also evidence that Petitioner's penis entered the victim's labia majora and labia minora.  The victim, viewing a diagram of a vagina, identified a spot that Petitioner's penis touched on her.  (Trial II Tr. IV, ECF No. 16-15, PageID.1504-1508.)  The spot she identified would have required Petitioner's penis to be at least within the victim's labia majora and perhaps the labia minora.  (*Id*., PageID.1587-1588.)   The jury deliberated for about forty-five minutes before finding Petitioner guilty of all of the charges.   (Trial Tr. II VII, ECF No. 16-18, PageID.2000-2003.)

II.    <u>AEDPA Standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

7

III.    <u>Prosecutor's Pretrial Errors Relating to the Charges (Habeas Issue I)</u>

Petitioner's style of argument is difficult to address.  He presents constitutional challenges by category.  He then identifies many problems from the course of his criminal prosecution that fall within that category.  And then he presents argument in his petition and brief, but also refers the Court to every argument he has raised relating to that category in his Michigan Court of Appeals briefs, Michigan Supreme Court briefs, and United States Supreme Court Petition for Certiorari.  Petitioner has, through all of these sources, presented hundreds of pages of argument.  With respect to Petitioner's argument regarding flaws in the charges, rather than sifting through all of Petitioner's claims, the Court will address the matter as Petitioner raises it, categorically.

Petitioner's stepdaughter reported the sexual abuse on May 11, 2010.  Petitioner was interviewed and arrested that day.  Petitioner was initially charged with three counts of CSC-II.  (Pet'r's Standard 4 Br., ECF No. 16-21, PageID.2206.)  During November of 2010, Petitioner received notice that his charges had been amended to include two charges of CSC-I.  (*Id.*, PageID.2207.)  The Muskegon County Circuit Court remanded the case to the district court for a preliminary examination on the amended charges.  (Muskegon Cty. Cir. Ct. Docket, ECF No. 16-1, PageID.389.)  On January 13, 2011, the district court conducted the preliminary examination hearing.  (Prelim. Exam. Tr., ECF No. 16-2.)  The parties did not present evidence; instead, they presented legal argument with regard to various theories as to how Petitioner's conduct might or might not constitute penetration as contemplated by the CSC-I statute.  (*Id.*)  The district court bound Petitioner over on only one of the two CSC-I charges, but that charge included alternative theories of either anal or vaginal penetration as well as alternative theories of anal penetration,

8

either penetration of the buttocks crease or penetration of the anal opening.  (*Id.*; May 2, 2011, Muskegon Cty. Cir. Ct. Mot. Hr'g Tr., ECF No. 16-3, PageID.435.)

The various alternative theories presented problems for the parties as trial approached.  The prosecutor sought clarification from the circuit court.  (May 2, 2011, Muskegon Cty. Cir. Ct. Mot. Hr'g Tr., ECF No. 16-3.)  The matter was not resolved that day.  It was picked up again two days later.  (May 4, 2011, Muskegon Cty. Cir. Ct. Mot. Hr'g Tr., ECF No. 16-4.) The court resolved the uncertainties by identifying the language it intended to use for instructions with regard to anal penetration, which had the effect of eliminating the buttocks crease penetration theory and striking the vaginal penetration theory from the information.  (*Id.*, PageID.484-487.)

The day before Petitioner's first trial began, the court heard argument on the prosecutor's motion to add another count of CSC-I to the information for penile/vaginal penetration.  (May 9, 2011, Muskegon Cty. Cir. Ct. Mot. Hr'g Tr., ECF No. 16-5.)  The court permitted the amendment over Petitioner's objection that the late addition on the eve of trial operated to prejudice him.  (*Id.*)  Accordingly, as of May 9, 2011, Petitioner had full knowledge of the charges of which he would ultimately be convicted at his second trial during December of 2011.

Petitioner raises myriad challenges to the steps along the path that led to those charges.  Most of his complaints relate to state law.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4,

Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Here, however, the Michigan Court of Appeals concluded that Petitioner's state law challenges to the pretrial proceedings were without merit. (Mich. Ct. App. Op., ECF No. 16-20, PageID.2059-2063.)

Although Petitioner's challenges rely primarily on state law, the means of communicating the charges to a criminal defendant does have constitutional significance. The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id.* "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused

may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Here, Petitioner was fully aware of the charges seven months before his trial. The precise nature of the penetrations charged was discussed *ad nauseum* on the record during the proceedings held in January and May 2011. Moreover, in light of the testimony presented in the first trial before the mistrial was declared, Petitioner was aware of everything the prosecutor could offer in support of those charges. There is nothing in the record to suggest that Petitioner was not able to prepare a defense.

Moreover, if there were flaws in the initial proceedings, it does not undermine the validity of a conviction. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Roe*, 316 F.3d at 570 ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."); *Mira*, 806 F.2d at 639; *Lewis v. Procunier*, 746 F.2d 1073, 1075 (5th Cir. 1984) (allegation of defective indictment insufficient to state a claim for habeas relief); *Johnson v. Turner*, 429 F.2d 1152, 1154 (10th Cir. 1970) (alleged defect in state complaint not cognizable in habeas corpus); *Hogan v. Ward*, 998 F. Supp. 290, 294-95 (W.D.N.Y. 1998) (petitioner not entitled to relief on ground that state felony complaint was defective). Taken at face value, petitioner's allegations establish, at best, that the original information or the January 2011 bindover was not based upon a proper showing of probable cause. It is well-settled, however, that a convicted defendant cannot upset a conviction on the argument that no probable cause was shown prior to conviction. *See United States v. Saussy*, 802 F.2d 849, 852 (6th Cir. 1986). Consequently, even if Petitioner were able to show that the complaint was not supported by a sufficient factual showing, this in no way impugns his conviction, which was based upon a jury verdict, not on the

11

complaint. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986) ("Jury's verdict rendered harmless any conceivable error in charging decision . . . .").

The Michigan Court of Appeals considered and rejected Petitioner's constitutional challenges to the charges raised against him. (Mich. Ct. App. Op., ECF No. 16-20, PageID.2059-2063.) The state appellate court's resolution was entirely consistent with clearly established federal law and its supporting factual determinations find ample support in the record. Notwithstanding the many flaws Petitioner perceives in the pretrial proceedings, he has failed to identify any constitutional infirmity relating to the charges brought against him. Accordingly, he is not entitled to habeas relief.

  IV. The bias of Judge Timothy Hicks (Habeas Issue II)

Judge Timothy Hicks presided over Petitioner's criminal proceedings in the Muskegon County Circuit Court. Petitioner picks his way through the transcripts of the pretrial proceedings and the trials to find rulings with which he does not agree and then presents those rulings as evidence of Judge Hicks's bias. The Michigan Court of Appeals flatly rejected Petitioner's claim:

> Defendant contends that the trial court was biased towards him. This issue is unpreserved because defendant failed to file a motion to disqualify the trial court within 14 days of the discovery of the alleged grounds for disqualification. MCR 2.003(D)(1)(a). We review unpreserved claims of judicial bias for plain error that affected the defendant's substantial rights. *People v. Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).
>
> "A criminal defendant is entitled to a 'neutral and detached magistrate.'" *Jackson*, 292 Mich App at 597, quoting *People v. Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). "A defendant claiming judicial bias must overcome 'a heavy presumption of judicial impartiality.'" *Id.* at 598, quoting *People v. Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999).

"Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct.  This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed.  The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments 'were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial.'" [*Jackson*, 292 Mich App at 598 (quotation marks and citations omitted).]

In other words, the defendant must show that the trial court possessed an actual, personal, and extrajudicial bias against him.  *Cain v. Dep't of Corrections*, 451 Mich 470, 495-496; 548 NW2d 210 (1996); *see* MCR 2.003(C)(1)(a).

In his standard 4 brief, defendant cites to the trial court's rulings regarding the amendment of the felony information as evidence of judicial bias.  Defendant also cites to the trial court's comment that defendant's discovery requests were deficient before it granted defendant's motion for a mistrial, and the trial court's decision to inform the second jury that the first mistrial was the fault of the trial court.  It is well established that judicial rulings and opinions formed during the proceedings are not valid grounds for alleging bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Wells*, 238 Mich App at 391. Also, critical and/or hostile commentary to counsel and the parties are generally not sufficient to pierce the veil of impartiality. *Id.* Consequently, defendant has failed to overcome the presumption of judicial impartiality because he has not presented evidence of actual, personal, and extrajudicial bias against defendant.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2063-2064.)

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case."  *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.  Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)).  However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias."  *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)

13

(internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009).  The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases:  (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975).

Petitioner does not allege any of the objective indicia of constitutionally impermissible bias.  Instead, he points to the judge's rulings and concludes only a biased judge could reach those results.  Even after the state appellate court noted that, typically, "judicial rulings and opinions formed during the proceedings are not valid grounds for alleging bias . . . [,]" (Mich. Ct. App. Op., ECF No. 16-20, PageID.2063-2064), in this Court, Petitioner relies solely on Judge Hicks's rulings to support his bias claim.

In *Liteky v. United States*, 510 U.S. 540 (1994),[1] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  *See United States v. Grinnell Corp.*, 384 U.S., at 583.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show

---

[1] *Liteky* is a case that addresses the statutory recusal standard for federal judges.  The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause.  *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

14

reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.  An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted).  Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-556.  Petitioner has failed to meet his burden.

The Michigan Court of Appeals' analysis of Petitioner's bias claim tracks the clearly established federal law cited above.  Petitioner has failed to show that the state court's determination is contrary to or an unreasonable application of that law.  Accordingly, Petitioner is not entitled to habeas relief.

V.    Double Jeopardy (Habeas Issue III)

Petitioner's first trial ended in a declaration of mistrial at Petitioner's request. He

contends that his second trial violated the Fifth Amendment's Double Jeopardy Clause. The

Michigan Court of Appeals rejected Petitioner's contention with the following analysis:

> The United States and Michigan Constitutions both protect against double
> jeopardy. US Const, Am V; Const 1963, art 1, § 15. Jeopardy attaches at the time
> the jury is selected and sworn. *People v. Dawson*, 431 Mich 234, 251; 427 NW2d
> 886 (1988). If a mistrial is declared before a verdict, "the Double Jeopardy Clause
> may bar a retrial." *Id.* However, when the defendant moves for or consents to a
> mistrial "and the mistrial was caused by innocent conduct of the prosecutor or
> judge, or by factors beyond their control, or by defense counsel himself, retrial is
> . . . generally allowed, on the premise that by making or consenting to the motion
> the defendant waives a double jeopardy claim." *Id.* at 253. Nonetheless, "where
> prosecutorial conduct was intended to provoke the defendant into moving for a
> mistrial[,]" retrial is barred. *Id.* If a defendant has sought or consented to a mistrial
> and later invokes this exception to prevent a new trial, the defendant must establish
> the prosecutor's intent from "the objective facts and circumstances of the particular
> case[.]" *Id.* at 257 (quotation marks and citation omitted).
>
> Here, double jeopardy does not bar a retrial because there is no evidence that the
> prosecution intended to provoke a mistrial. Defendant requested a mistrial after the
> prosecution produced Johnson's report from her forensic interview with the victim
> a day after the first jury trial had begun. However, the prosecution informed the
> trial court that he did not receive Johnson's report until the day he faxed it to defense
> counsel. The prosecution clarified that he had not thought to ask Johnson if she
> had a report, and Johnson offered her report to the prosecution only after the
> prosecution met with Johnson. Moreover, defendant stated on the record that he
> understood the implication of requesting a mistrial and that he understood that
> declaring a mistrial would allow for a new trial to begin. Accordingly, the facts
> and circumstances of this case do not establish that the prosecution intended to
> provoke a mistrial.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2064.) Although relying on state authority, the

appellate court's analysis is entirely consonant with clearly established federal law:

> The Fifth Amendment's Double Jeopardy Clause, applicable to the states through
> the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland*, 395
> U.S. 784, 787 (1969), "protects a criminal defendant from repeated prosecutions
> for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). Stated
> otherwise, the clause "affords a criminal defendant a 'valued right to have his trial
> completed by a particular tribunal.'" *Id.* at 672–73 (quoting *Wade v. Hunter*, 336

U.S. 684, 689 (1949)).  That right, however, is not absolute, and the Clause does not guarantee that the state's interest in enforcing the criminal laws against a defendant will be vindicated in a single trial.  *Id*. at 673.  For example, where a trial is terminated at the defendant's urging, the Double Jeopardy Clause does not bar a retrial.  *Id*. at 673.

Under a "narrow exception" to this general rule, *id*. at 673, where "the conduct giving rise to the [defendant's] successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial," the defendant "may invoke the bar of double jeopardy in a second effort to try him."  *Id*. at 679; *see id*. at 676, 102 S. Ct. 2083 ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.").  "[T]his standard is exacting."  *Martinez*, 644 F.3d at 243.  "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."  *Kennedy*, 456 U.S. at 675–76.  The prosecutor's intent, then, is what matters.  Intent generally is inferred from objective facts and circumstances.  *Id*. at 675; *see also id*. at 680–81 (Powell, J., concurring) ("Because 'subjective' intent often may be unknowable, I emphasize that a court—in considering a double jeopardy motion—should rely primarily upon the objective facts and circumstances of the particular case.").

*Phillips v. Ct of Common Pleas, Hamilton Cty.*, 668 F.3d 804, 811-12 (6th Cir. 2012).

A determination regarding the prosecutor's intent is a "finding of fact."  *Oregon v. Kennedy*, 456 U.S. 667, 675 (1982).  This Court must presume that the Michigan Court of Appeals' finding that the prosecutor did not intend to provoke a mistrial is correct.  Petitioner may overcome the presumption with clear and convincing evidence.

Petitioner attempts to cast the prosecutor's late provision of the written report as a *Brady v. Maryland,* 373 U.S. 83 (1963), violation or, at least, a discovery violation.  It does not appear that either characterization is correct.  Even if they were, the *Kennedy* case makes clear that demonstrating prosecutorial misconduct that results in a request for mistrial is not enough.  Petitioner must establish the prosecutor's intent to provoke a mistrial.   He offers nothing more than his say-so.  There are other factors, in addition to the factors relied upon by the Michigan Court of Appeals, to support a finding of no such intent, including the prosecutor's active

17

opposition to the request for mistrial.  (Trial I, Tr. IV, ECF No. 16-9, PageID.1029-1036, 1043-1046.)

The state court's resolution of the double jeopardy issue is not contrary to, or an unreasonable application of, clearly established federal law.  The state court's factual determinations are reasonable on this record.  Petitioner offers nothing to overcome the presumption that the state court has correctly determined the prosecutor did not intend to provoke a mistrial.  Accordingly, Petitioner is not entitled to habeas relief on his double jeopardy claim.

VI.    Dr. Buchanan's Testimony that Social Worker Melissa Peterson Stated that the Victim had been Penetrated (Habeas Issue IV)

Petitioner next complains that the testimony of prosecution expert Dr. Gerald Buchanan invaded the province of the jury when he testified that Social Worker Melissa Peterson had stated that the victim had been penetrated.  Such testimony was admitted at Petitioner's first trial.  (Trial I Tr. III, ECF No. 16-8, PageID.901-902.)  The same testimony was not admitted in Petitioner's second trial, the trial that resulted in his convictions.

In Petitioner's second trial, the prosecutor posed this question to Dr. Buchanan for the purpose of eliciting the same information that was admitted in the first trial:

Q:    And what was your understanding from the history that Melissa Peterson took about whether there had been any vaginal penetration?

(Trial II Tr. IV, ECF No. 16-15, PageID.209.)  But, Petitioner's counsel posed an objection regarding the layered hearsay implicit in the question.  (*Id.*, PageID.1584-1586.)  The trial court concluded the evidence was admissible under an exception to the hearsay rule.  (*Id.*)  Nonetheless, the prosecutor simply never returned to the "penetration" question and Dr. Buchanan never provided the information Petitioner finds so objectionable.  (*Id.*, 1586-1612.)

18

When Melissa Peterson testified, the prosecutor asked her an even more pointed question:

> Q:   Based on your training and experience are you qualified to make findings
> of      whether that constitutes penetration or not?

(Trial II, Tr. VI, ECF No. 16-17, PageID.1885.)  Petitioner's counsel objected because the issue of penetration was for the jury.  (*Id.*)  The trial court agreed: "I'm sustaining the objection.  In light of all the discussion we've had about that, Mr. Hedges, I think that asks her to invade the province of the jury."  (*Id.*, PageID.1885-1886.)  Thus, the constitutional challenge framed by Petitioner is factually unsupportable.

To the extent Petitioner is challenging the admission of layered hearsay under the Michigan Rules of Evidence as unconstitutional, rather than the witnesses' invasion of the province of the jury, his claim fares no better.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552.

19

Further, under the AEDPA, the Court may not grant relief if it would have decided the evidentiary question differently.  The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

The Supreme Court has never recognized that the Constitution is violated by the admission of unreliable hearsay evidence.  *Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013). Instead, the Supreme Court has merely "h[e]ld out the possibility that 'the introduction' of 'evidence' in general could be 'so extremely unfair that its admission violates fundamental conceptions of justice.'"  *Id.* at 631 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quotation omitted)).  Such a standard is highly general.  *Id.*  "'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations,'—and, it follows, the less likely a state court's application of the rule will be unreasonable."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Here, as in *Desai*, the state court held that the admission of the "out of court" statements fell within an established hearsay exception—in this case for statements made for purposes of medical treatment.  (Trial II, Tr. IV, ECF No. 16-15, PageID.1586; Mich. Ct. App. Op., ECF No. 16-20, PageID.2065-2066); *see also* Mich. R. Evid. 803(4).  "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law."  *Id.* at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  Accordingly, Petitioner is not entitled to habeas relief even if his claim is directed to the trial court's admission of Dr. Buchanan's "hearsay" statements.

20

VII.    The Vagina Diagram

During the victim's testimony, the prosecution provided her with a diagram of female genitalia, an illustration taken from a college textbook, that she could use to mark where Petitioner's penis had touched her.  (Trial II Tr. IV, ECF No. 16-15, PageID.1504-1508.)  The victim used a marker to identify the place where Petitioner's penis had touched her.  (*Id.*, PageID.1507.)  The prosecutor moved to admit the marked drawing.  Petitioner's counsel objected, but the trial court admitted the exhibit.  (*Id.*, PageID.1508.)

Petitioner attaches an unmarked copy of the illustration to his petition.  (Pet., ECF No. 1-3, PageID.103.)  Petitioner contends the illustration was fundamentally prejudicial because:

> [t]he diagram is of a wide-open, spread eagled vagina.  The labia are fully opened to see inside.  There is clearly no place for [the victim] to have been able to accurately mark where she'd stated contact occurred, exterior.

(Pet., ECF No. 1, PageID.23.)  Petitioner's counsel presented the victim with a different illustration, presumably one that did not prejudice Petitioner, during cross-examination.  (Trial II Tr. IV, ECF No. 16-15, PageID.1523-1524.)

The Michigan Court of Appeals was not swayed by Petitioner's argument that the illustration was unduly prejudicial:

> Demonstrative evidence is used at trial to assist the jury in determining a material issue.  *Unger*, 278 Mich App at 247.  The admissibility of demonstrative evidence is based on the "traditional requirements for relevance and probative value[.]"  *Id.* (quotation marks and citation omitted).  In general, all relevant evidence is admissible.  *People v. Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010), citing MRE 402.  Relevant evidence is evidence that has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *Id.* at 236–237, quoting MRE 401.  Relevant evidence may be excluded when "'its probative value is substantially outweighed by the danger of unfair prejudice.'"  *Id.* at 237, quoting MRE 403.
>
> > Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is

needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence. [*People v. Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008) (citations omitted).]

At trial, the prosecution asked the victim to color in the areas on the diagram where defendant touched her.  After the victim colored the area immediately surrounding the vaginal opening, the prosecution confirmed with the victim that defendant touched the areas immediately surrounding the vaginal opening, but, he did not touch inside the vaginal opening.  This evidence was relevant to assisting the jury in determining whether defendant committed penetration, an element of first-degree criminal sexual conduct, because as previously discussed, under MCL 750.520a(r), sexual penetration includes any intrusion, however slight, of the genital opening, including both the vagina and the labia.  *Lockett*, 295 Mich App at 188; Bristol, 115 Mich App at 238.  Moreover, the diagram was not unfairly prejudicial because it was a standard medical diagram of the female anatomy and it merely illustrated the victim's testimony.  The trial court did not abuse its discretion in admitting the evidence.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2066-2067.)

As previously discussed, under the AEDPA, this Court may not grant relief if it would have decided an evidentiary question differently.  The Court may only grant relief if a petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders*, 221 F.3d at 860.  Again, here, Petitioner has not met this difficult standard.  Petitioner has not provided any evidence, much less clear and convincing evidence, that the state court's factual determinations regarding the probative or prejudicial character of the demonstrative aid are unreasonable.  Similarly, Petitioner has not shown that the state court's admission of exhibit under Michigan Rule of Evidence 403 is contrary to, inconsistent with, or an unreasonable application of clearly established federal law.  Indeed, he cannot.  The Sixth Circuit has determined that "[t]he

Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

VIII.    Speedy Trial

Petitioner was arrested on May 10, 2010. His trial commenced almost nineteen months later in December of 2011.  In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D).  *People v. Cain*, 605 N.W.2d 28, 39 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003).  The Michigan state courts apply the *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972), four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises from federal or state law. *Cain*, 605 N.W.2d at 39 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)).

In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial.  A court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530.  No one factor is dispositive; rather, they are related factors that must be considered together with any other relevant circumstances. *Id.* at 533.

Although the state courts apply the clearly established federal law, the *Barker* test, to evaluate "speedy trial" claims, they apply it a little differently than the federal courts.  The state courts shift the burden of proof with respect to prejudice based on the length of the delay, drawing

23

the line at 18 months. *Cain*, 605 N.W.2d at 39.  Once the delay reaches 18 months, prejudice is

presumed and it is the prosecutor's burden to rebut the presumption.  In Petitioner's case, the delay

was long enough to shift the burden.

The federal courts eschew a "bright-line rule."  *Brown v. Romanowski*, 845 F.3d

703, 717 (6th Cir. 2017).  Instead, the federal "courts must conduct  a functional analysis of the

right in the particular context of the case."  *Id.* (quoting *United States v. Ferreira*, 665 F.3d 701,

709 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 522)) (internal quotation marks omitted).  This is

a difference between the federal and state applications of the test, but the difference would not

render a state court's application of the test unreasonable or contrary to *Barker.  See, e.g., Brown*

*v. Bobby,* 656 F.3d 325, 329-330 (6th Cir. 2011) (court concluded Ohio's use of a 270-day rule

was not "contrary to" *Barker*).

Here, the Michigan Court of Appeals never applied the *Barker* test because it

concluded Petitioner had waived his speedy trial rights:

> Defendant argues that his right to a speedy trial was violated.  "Unpreserved, constitutional errors are reviewed for plain error affecting substantial rights." *Pipes*, 475 Mich. at 270.  A criminal defendant can waive his right to a speedy trial. *People v. Williams*, 475 Mich. 245, 260; 716 NW2d 208 (2006).  "Waiver consists of (1) specific knowledge of the constitutional right and (2) an intentional decision to abandon the protection of the constitutional right." *Id.* at 261.  "Courts should indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* at 260 (quotation marks and citation omitted).
>
> In this case, defendant waived his right to a speedy trial.  On August 8, 2011, defendant requested an adjournment of his second trial because his defense counsel left his firm and no other attorney at the firm had handled defendant's case. Defendant requested that the trial court allow an adjournment so that his original counsel could continue to represent him, and he acknowledged that he was waiving his right to a speedy trial in order to keep the same attorney as his defense counsel. Consequently, defendant's right to a speedy trial was not violated because defendant waived his right.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2067.)  The state appellate court's analysis is entirely

consistent with *Barker*, even though it does not apply the *Barker* test.  Although the *Barker* court

rejected the proposition that a defendant might waive his speedy trial right by silence, it acknowledged that a defendant can knowingly and voluntarily waive the right. *Barker*, 407 U.S. at 525-29. The record amply supports the state court's determination that Petitioner expressly, knowingly, and voluntarily waived his speedy trial right during August of 2011, to ensure that he would be able to continue with defense counsel of his choice. (Aug. 8, 2011, Hr'g Tr., ECF No. 16-11, PageID.1071-1075.) The trial court asked Petitioner if he was willing to give up his constitutional and statutory rights to have his case tried within certain time deadlines; Petitioner responded: "Yes sir." (*Id.*, PageID.1075.)

Petitioner's waiver occurred before the 18 month "bright line" had passed. Therefore, in the Michigan courts, there was no "speedy trial" issue before the waiver. In the absence of the state's "bright line," however, Petitioner's speedy trial rights may have been compromised before his waiver. To eliminate any possible constitutional taint, the Court will review the delay at issue prior to Petitioner's waiver.

The length of the delay before Petitioner's first trial was not remarkable. Petitioner was arrested on May 10, 2010. His first trial started on May 10, 2011. "[A] delay is presumptively prejudicial when it approaches one year." *United States v. Gardner*, 488 F. 3d 700, 719 (6th Cir. 2007). Delays of less than a year, on the other hand, might be so ordinary that they do not even trigger analysis of the other factors. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Indeed, the Sixth Circuit has suggested that a "ten-month delay . . . is likely right at the line to trigger an analysis of the remaining factors." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007).

Review of the docket during the year between Petitioner's arrest and his first trial reveals that Petitioner's first scheduled trial date, August 25, 2010, was adjourned because the

25

court was in trial on another case and the Michigan State Police Lab had still not issued its report regarding DNA.  (Muskegon Cty. Cir. Ct. Docket, ECF No. 16-1, PageID.389.)  The trial was rescheduled for October 13, 2010.  The trial could not go forward on that date because the court was in trial on another case.  (*Id*.)  The trial was rescheduled for November 17, 2010.  Before that date arrived, the DNA results came in.  The lab found Petitioner's DNA on the rectal swab taken from the victim.  Accordingly, the prosecutor sought to add counts for CSC-I, including a count alleging anal penetration, based in part on the DNA results.  Based on a stipulation between the parties, on November 5, 2010, the existing dates were adjourned and the case was remanded to the district court for a new preliminary examination.  (*Id*.)

The case was bound over again and reopened in the circuit court on January 19, 2011.  (*Id*.)  The circuit court scheduled trial for February 8, 2011.  (*Id*., PageID.390.)  At that date, however, both parties informed the court that they intended to file motions to clarify the results of the district court's preliminary examination and order.  (*Id*.)  The court reset the trial for May 10, 2011, and, before that date arrived, set a hearing for the motions to clarify, and several other motions, for May 2, 2011.  (*Id*.)  The week preceding the scheduled trial was consumed by hearings relating to the various motions.  (*Id*., PageID.390-391.)  The trial proceeded on May 10 and continued until Petitioner sought and was granted a mistrial, as described above.

The course of the proceedings and the various reasons for delay do not favor Petitioner's "speedy trial" challenge.  Neither the prosecutor nor the defense was responsible for the first or second trial adjournments.  Both were responsible for the third adjournment—they stipulated to the remand.  Both were responsible for the fourth adjournment—they both filed motions.  Petitioner alone was responsible for the delay occasioned by the mistrial.  The prosecutor opposed the declaration of mistrial and the court concluded the prosecutor was not at fault for the

late provision of a report, the event that precipitated Petitioner's motion.  Finally, Petitioner was solely responsible for the delay that adjourned the August 2011 trial date to December 2011.

Although "[a] deliberate attempt to hamper the defense should be weighted heavily against the government . . . , [a] more neutral reason such as . . . overcrowded courts should be weighted less heavily . . . ."  *Barker*, 407 U.S. at 531.  Other than the delays caused by the unavailability of the judge, Petitioner was at least as culpable for the delays as the prosecutor. Perhaps for that reason, Petitioner never asserted his speedy trial rights until his appeal.  Moreover, Petitioner's complicity in causing the delays belies any claim that he suffered prejudice as a result.

The state appellate court's determination that Petitioner waived his speedy trial rights is well-supported by the record and entirely consistent with clearly established federal law. To the extent Petitioner's speedy trial rights were compromised before that waiver, it is Petitioner's own fault.  Based on this Court's balancing of the *Barker* factors during the pre-waiver period, Petitioner has failed to demonstrate any violation of his speedy trial rights.

IX.    Prosecutorial Misconduct (Habeas Issue VII)

Petitioner, starting from the premise that he is not guilty of the crimes of which he has been convicted, identifies pretty much every step the prosecutor took to secure those convictions as prosecutorial misconduct.  Many of those steps have already been addressed, i.e., the length of Petitioner's detention before trial, the initial and amended charges, the provision of witness Johnson's report and other reports immediately before and then during the first trial, intending to provoke a mistrial, the prejudicial vagina diagram, and the "hearsay" testimony of Dr. Buchanan.  The Court will not revisit these issues simply because Petitioner presents them anew under the heading of prosecutorial misconduct.  Other issues, however, are raised for the first time and will be addressed below.

27

To be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13;  *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

### A.      High Bond

Petitioner complains that the prosecutor caused Petitioner significant prejudice by requesting a high bond.  The docket sheet reveals that the court imposed a $250,000.00 bond requirement.  (Muskegon Cty. Cir. Ct. Docket, ECF No. 16-1, PageID.388.)   The Michigan appellate court did not address Petitioner's challenge regarding his bond.

The Eighth Amendment provides that "'[e]xcessive bail shall not be required.'" *United States v. Salerno*, 481 U.S. 739, 752 (1987).  But, the prosecutor does not require bail, the court does.  Petitioner fails to identify any authority for the proposition that a request for a high bond, absent some other prosecutorial wrongdoing, makes a prosecutor constitutionally responsible for the bond the court chooses to impose.  Petitioner does not identify any prosecutorial misconduct in the bond process other than the prosecutor's allegedly excessive request.

Moreover, though a habeas corpus petition can be an appropriate means to remedy excessive bail, once the defendant is convicted in the state court, with respect to habeas relief, the issue becomes moot.  *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *see also United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004) ("He first argues that the prosecutor violated his Fifth, Eighth, and Fourteenth Amendment rights by fabricating evidence so that the Magistrate would deny his pretrial release on bond.  Manthey's conviction, however, renders his constitutional claims to pretrial bail moot.").

Petitioner has failed to demonstrate that the prosecutor participated in misconduct of constitutional proportions when he requested bond in the amount of $250,000.00.  Moreover,

to the extent Petitioner's bond was excessive, the issue, as grounds for habeas relief, has been mooted by his conviction.

### B.    *Brady* violations

Under *Brady v. Maryland,* 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.   The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 281 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source."  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).  "[W]here the alleged Brady evidence is available to

the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008) (internal quotations omitted).

The Michigan Court of Appeals expressly applied *Brady* in rejecting Petitioner's claim that the prosecutor impermissibly withheld the Johnson report.  (Mich. Ct. App. Op., ECF No. 16-20, PageID.2065.)  The court noted that Petitioner admitted that the prosecution supplied him with the report, thereby foreclosing any *Brady* claim.  (*Id*.)  The court's statement regarding Petitioner's admission is well-supported by the record.

Petitioner repeats his *Brady* claims in this Court, but he has not remedied the factual flaw identified by the state appellate court.  Petitioner does not identify a single piece of evidence, exculpatory or otherwise, that the prosecutor failed to provide him or that he did not otherwise possess for his second trial.  Thus, he has failed to demonstrate any *Brady* violation and he is not entitled to habeas relief on this claim.

### C.     Improper Closing Argument

Finally, Petitioner argues that the prosecutor rendered the trial unfair with improprieties in his closing argument.

1.     arguing facts not in evidence or mischaracterizing evidence

A prosecutor is not limited to simply recounting the evidence during closing argument. He may also argue reasonable inferences from the evidence.  *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Nonetheless, it is unquestionably improper for a prosecutor to argue facts not in evidence.  *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).

Petitioner claims that the prosecutor crossed the line when he argued that the anal swab evidence demonstrated anal penetration.  The prosecutor argued:

> [T]here's no question that his penis did not go up there, penetrate through that sphincter muscle, go all the way in. She would've been screaming bloody murder if that happened. She would've felt it and she would've told us about it. I agree that did not happen in this case, but what did happen in this case, and is consistent [with] specifically what she told, um, Melissa Peterson and, and is consistent with the finding of, of the semen inside the canal beyond the sphincter muscle, what is consistent is that he was, as to the rectal penetration, going right up to the hole. Just to the hole. To the tip of the hole and that's where he ejaculate[d]. Remember the testimony of Dr. Buchanan, how did that semen get in there? I think he had to go up there and deposit it. What's the defendant's theory here? The migration theory. I submit that's utterly ridiculous.

(Trial II Tr. VI, ECF No. 16-17, PageID.1929-1930.) Petitioner's counsel, looking at the same

evidence, argued as follows:

> And then I think you gotta look at the combination of Dr. [Hoogstra's] testimony and the DNA evidence in this case. And this is extremely important. Remember Dr. [Hoogstra's] testimony when he's describing the size of the DNA being very, very small. You'd have to see with a microscope and all [of the] experts all testify it could fit on the head of a pin. And Dr. [Hoogstra's] testimony, the prosecution witness in this case, is totally inconsistent with the theory of Mr. Hedges in this case regarding the anal penetration because basically what Mr. Hedges wants you to buy in this case, he hopes you fall into in this case, is that there is semen, or DNA found in the anal opening and therefore there had to be anal penetration or penetration of the labia majora. That's what he's trying to argue. Totally inconsistent with what Dr. [Hoogstra] testified to. What he testified to was . . . that seminal fluid travels and that obviously if seminal fluid is ejaculated onto a buttock it travels. And my client admits in his statement it shot all over [her] butt. Remember that? Soaked it. In this case it would obviously travel down into the concaved areas, down into the crack. Towards the hole. And Dr. [Hoogstra] testified very, very clearly the seminal fluid would travel into a crevice so the penis doesn't have to be there, it's the seminal fluid that's just traveling and locates somewhere in the crevice. Not the penis. The small, small, small little head of a pin DNA is [in] a crevice and then Dr. [Hoogstra] says he doesn't wipe the area clean and just makes sure that the swab goes inside and they get the DNA outside, no, no, no. He takes it and he touches the outside crevice before he goes inside. So don't buy this theory that Mr. Hedges is indicated to you that the DNA had to be inside, nobody testified to that. And recognize that Dr. [Hoogstra] stood up very well to Mr. Hedges. Made it very clear to him that this DNA could've easily been on the outside, the crevice, the cheek, in that area. Consistent with criminal sexual conduct in the second degree. No penis on the fold of the anus or in the anal opening or over the anal opening. And based on all of that testimony, the lab people's testimony, does that give you a reasonable doubt? A fair honest doubt out [of] the evidence or the lack of evidence in this case?

(*Id.*, PageID.1960-1962.)

32

The prosecutor responded:

> A reasonable doubt is a fair honest doubt growing out of the evidence or lack of evidence.  Let's look at this part, it is not nearly an imaginary or possible doubt. So, so this absolutely ridiculous migrating sperm defense, if that's not in the merely impossible imaginary category I don't know what ever is.  She has semen in her rectum because of him.  Because he put it there and it didn't walk there and it didn't fly there it was deposited there but anything else isn't following the rule.

(*Id.*, PageID.1971.)

The Michigan Court of Appeals concluded that the prosecutor's argument was fair comment on the evidence:

> Defendant argues that he was denied a fair trial when the prosecution argued facts not in evidence.  Specifically, defendant asserts that the prosecution mischaracterized the evidence when it argued that semen was found inside the rectum.  Defendant cites to the prosecution's May 9, 2011, comment during a pre-trial motion hearing that the rectal swab was taken "just outside" the rectum in support of his argument.
>
> "A prosecutor may not make a factual statement to the jury that is not supported by the evidence[.]"  *Dobek*, 274 Mich App at 66. The prosecution "is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case[.]"  *Id.*  "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms."  *Id.* Defendant's argument is misplaced.  The prosecution's pre-trial statement to the court is not evidence presented at trial.  Rather, the evidence from trial established that the rectal swab was taken from the victim's rectal opening. Specifically, while Hoogstra admitted that the rectal swab could have been taken from the anus crevice or inside the anal opening, he also testified that he collected the rectal sample just past the anal sphincter muscle.  Based on this evidence, the prosecution was free to argue to the jury that anal penetration occurred.  There was no misconduct.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2068.)

The Court has carefully reviewed the testimony of Dr. Hoogstra.  The prosecutor and Petitioner's counsel each took the testimony and encouraged the jurors to focus on, and draw inferences from, that part of the testimony that favored his position.  That is fair argument.

The Michigan Court of Appeals' analysis of the issue is entirely consistent with clearly established federal law and the court's conclusions regarding the evidence are reasonable in light of this record.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

2.      vouching

Petitioner next complains that the prosecutor impermissibly vouched for the credibility of the victim.  The federal courts have generally recognized two types of objectionable vouching.  *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see  Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard).  The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility.  *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965);  *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

The Michigan Court of Appeals resolved Petitioner's complaint as follows:

> Finally, defendant argues that he was denied a fair trial when the prosecution vouched for the victim's credibility during its closing argument. While the prosecution cannot vouch that he has some special knowledge regarding a witness's truthfulness, *Bahoda*, 448 Mich at 277, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes[,]" *Thomas*, 260 Mich App at 455.  A review of the prosecution's closing argument reveals that the prosecution did not suggest that he had special knowledge concerning her truthfulness. The prosecution argued that the victim was

34

a credible witness because she was consistent when describing the sexual assaults. There was no misconduct.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2068.)   The prosecutor described the victim's testimony as "honest" and "truthful" and "100% consistent."   (Trial II Tr. VI, ECF No. 16-17, PageID.1928.)  He also noted for the jury how hard it would be for an adult to describe a sexual experience in the courtroom environment and that it would be that much more difficult for a child. (*Id.*, PageID.1930-1932.)  In response, Petitioner's counsel identified some differences between her testimony in the first trial and the second, but, generally, he did not attack the victim's credibility.  Her testimony, in virtually every respect, supported Petitioner's claim that the abuse never escalated to penetration.

The Court has carefully reviewed the closing arguments.  The prosecutor certainly invites the jury to credit the victim's testimony, but not based on anything other than the evidence presented at trial.  The prosecutor never bolsters the victim's testimony through the prestige of his office nor does he suggest to the jury that they should take his word for her credibility because of evidence he has seen that the jury has not.  The Michigan Court of Appeals determinations with regard to the facts and the law are reasonable on the record and in light of clearly established federal law.  Petitioner is not entitled to habeas relief on this claim.

3.      denigrating the defense and Petitioner

A prosecutor is free to argue from the evidence that certain defense witnesses are lying but may not denigrate the defense or defense counsel.  *See Hanna v. Price*, 245 F. App'x 538, 545-46 (6th Cir. 2007); *Bates v. Bell*, 457 F.3d 501, 525 (6th Cir. 2006).   Petitioner claims the prosecutor crossed the line in argument when he characterized the Petitioner's "sperm migration" argument as ridiculous and when he elicited testimony from Petitioner's ex-wife that the couple had filed for bankruptcy.

35

With regard to Petitioner's claim that the prosecutor elicited testimony from Petitioner's ex-wife, in both trials, that they had filed for bankruptcy, was not addressed by the Michigan Court of Appeals.  (Mich. Ct. App. Op., ECF No. 16-20.)  The Court has reviewed the transcript of Petitioner's ex-wife's testimony and has not found a single reference to bankruptcy.  Indeed, the Court has searched the transcript of all of the testimony from Petitioner's trial and has found no such reference.  Accordingly, the Court rejects Petitioner's claim as factually unfounded.

The Michigan Court of Appeals addressed, and rejected, Petitioner's claim that the prosecutor denigrated the defense by referring to the "sperm migration" theory as utterly ridiculous:

> Next, defendant asserts that the prosecution denigrated the defense by stating that defendant's mitigation theory was "utterly ridiculous."  Prosecutors "must refrain from denigrating a defendant with intemperate and prejudicial remarks."  *Bahoda*, 448 Mich at 283.
>
> The prosecutor may not question defense counsel's veracity.  When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client.  This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [*People v. Wise*, 134 Mich App 82, 101–102; 351 NW2d 255 (1984) (citations omitted).]
>
> A review of the prosecution's closing argument clearly shows that the prosecution was commenting on defendant's defense theory, not the veracity of defense counsel.  The prosecution is permitted to comment on the weakness of a defendant's theory of defense.  *People v. McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).  Consequently, there was no prosecutorial misconduct.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2059.)

The court of appeals' determination is entirely consistent with clearly established federal law.  Not every aspersion cast by a prosecutor upon a defense attorney's presentation of a case requires reversal of the guilty verdict.  *See Young*, 470 U.S. at 11 (stating that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone,

for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial").  "A prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992); *see also Brown v. McKee*, 231 F. App'x 469, 480 (6th Cir. 2007) (a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel).  Here, while using the word "ridiculous," the prosecutor proceeded to use the evidence to explain why jurors should not accept the defense argument that Petitioner's sperm simply flowed inside of the victim's anus past the sphincter muscle.  (Tr. II at 143, 145-46.).

Moreover, even had the prosecutor's comments been improper, they were not flagrant enough to justify habeas relief.  *See Henley v. Cason*, 154 F. App'x 445, 447 (6th Cir. 2005).  The prosecutor's comments were not so incendiary so as to inflame the jury's passion or distract them from determining petitioner's guilt or innocence.  *See Davis v. Burt*, 100 F. App'x 340, 348 (6th Cir. 2004). When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, (Trial II Tr. VII, ECF No. 16-18, PageID.1986-1987), the prosecutor's comments did not render the entire trial fundamentally unfair.  *Byrd*, 209 F.3d at 533.

Because Petitioner has failed to demonstrate that the state court's factual determinations are unreasonable or that its legal determinations are contrary to, or an unreasonable application of, clearly established federal law, he is not entitled to habeas relief on this claim.

37

4.    appealing to the jurors' sympathy

Petitioner next contends that the prosecutor made an improper appeal to the jurors'

sympathy when he commented on the difficulty the victim faced in testifying about sexual matters.

The prosecutor argued:

> [Prosecutor]:  You have to ask yourself how often was it going on?  We know what [the victim's] testimony is, going on just about every Monday for three years.  Most of you have been parent[s], what happens to a child that goes through something like that?  Every week, every Monday for three years.  How do they continue to live?  How do they continue to function?  What do they do?  What happens to them?  The other thing you have to consider, in evaluating the testimony of [victim] is, is how hard is this for, not just a child to do, how hard is it for anybody to do?
>
> When I was a younger prosecutor on the other side of the state I was sent to a career prosecutor's school in Texas and at one of the sessions on prosecuting child sex crimes you go in the classroom, there's about 40 of us students and instructor walks in, an experienced prosecutor, and she says to all of [us], ah, I want all of you to stand up.  So all 40 of us stand up.  And she says, OK, um, who wants to be the judge?  Everybody raised their hand.  OK. So, you be the judge.  Sit down.  Who wants to be the court officer?  Sit down.  Most courts back then had court reporters, you're the court reporter.  Sit down.  Who's the detective?  You're the detective.  Sit down.  Twelve jurors sit down.  Alternate juror sit down.  And we go through all the treatment people, the doctor at the emergency room, the nurse, you know, the counselors that you have to talk to and she goes through all these people and they're all sitting down and then she gets to about four of us left, I'm one of the four, and so four of us are standing.  And she looks at us and she says, all right, which one of you four wants to talk about your most recent sexual experience in front of all these strangers?  Scared the daylights out of me.  She said, all right, I just wanna make a point so you understand just the, you know, you're adults.  I'm asking you about something that's normal.  I'm asking you about something that you shouldn't be ashamed of.  That you have an adult's experience, you know age appropriate framework to analyze it within.  My point is can you imag[in]e how this is to, to, to, for a child at the age of ten when this [was] first reported, seven when it started or maybe even six.  To be thrust in front of all of these strangers one after another and asked all these questions about something they really shouldn't even know about?  It scare the daylights out.

(Trial II Tr. VI, ECF No. 16-17, PageID.1930-1932.)  The argument prompted this response:

> [Defense Counsel]: Judge, is, is the prosecutor saying that my client doesn't have a right in the United States of America to have a trial because we're getting close to that edge now.
>
> THE COURT:  The objection, Mr. Davis, is what?

38

[Defense Counsel]:  It's totally inappropriate.  My client has a right to have a trial.

THE COURT:  Sure he does.

[Defense Counsel]:  If he's saying that a person doesn't, ah, going through a trial, ah, goes to the, the standard cross examination, everything else.

THE COURT:  Sure.  I, he certainly does that.  Mr. Hedges, any response?

[Prosecutor]:  Yeah, I'm not even arguing.  I'm just arguing that as they evaluate the credibility of the victim keep in mind her age and the kind of experience she went through –

THE COURT:  Overruled.  Victim credibility is a big issue here.

(*Id.*, PageID.1932-1933.)  The court of appeals found no fault with the prosecutor's argument:

> Finally, defendant claims that he was denied a fair trial when the prosecution appealed to the sympathy of the jury by asking the jury to consider how difficult it is for children to relate the intimate details of sexual abuse to strangers.  "Appeals to the jury to sympathize with the victim constitute improper argument."  *Watson*, 245 Mich App at 591.  In this case, in reading the prosecution's argument in context, the prosecution was not appealing to the jury's sympathy.  Instead, the prosecution was arguing that, based on the evidence, the victim was a credible witness.  While the prosecution's argument may not have been the most artful way to comment on the victim's credibility, there was no prosecutorial misconduct because, as already noted, the prosecution may comment on the credibility of the victim, *Thomas*, 260 Mich App at 455, and it is given latitude in its arguments, *Bahoda*, 448 Mich at 282.

> Moreover, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors."  *People v. Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).  Here, the trial court instructed the jury that the attorneys' arguments were not evidence.  Thus, any error in the prosecution's closing argument would have been harmless.

(Mich. Ct. App. Op., ECF No. 16-20, PageID.2059.)

The prosecutor's comments regarding the victim's age, the impact of repeated sexual abuse, and the difficulty inherent in testifying about it were not so inflammatory as to constitute a denial of due process.  The cases in which the Sixth Circuit has found prejudicial misconduct have involved much more egregious and pervasive attempts to evoke sympathy.  For example, in *United States v. Payne*, 2 F.3d 706, 711-15 (6th Cir. 1993), the Court of Appeals

39

reversed a federal conviction because of the prosecutor's repeated references to Christmas time, poor pregnant women, and employee layoffs, finding that the prosecutor's statements were part of a "calculated effort to evoke strong sympathetic emotions" for victims and against the defendants. Similarly, in *Martin v. Parker*, 11 F.3d 613 (6th Cir. 1993), the Court of Appeals condemned the prosecutor's repeated references to the defendant as a "Hitler," a "dictator," a "disturbed individual," and "one of the most obnoxious witnesses you'll ever hear." *Martin*, 11 F.3d at 616; *accord United States v. Steinkoetter*, 633 F.2d 719, 720-21 (6th Cir. 1980) (prosecutor's comparison of defendant to Pontius Pilate and Judas Iscariot require reversal).

By contrast, the prosecutor's remarks in the present case were not directed toward the petitioner and were not inflammatory. It is impossible to expect that a criminal trial will be conducted without some showing of feeling. "'The stakes are high, and the participants are inevitably charged with emotion.'" *Sizemore v. Fletcher*, 921 F.2d 667, 670 (6th Cir. 1990) (quoting *United States v. Wexler*, 79 F.2d 526, 529-530 (2d Cir. 1935). Given the circumstances, the state court's determination that the comments were intended to invite the jury to consider the victim's credibility, not evoke the jurors' sympathy, is reasonable on the record and is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must

"engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy v. Ohio*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.


Dated:    October 9, 2018                              /s/ Ray Kent
                                                      Ray Kent
                                                      United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).